## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Orlando Almonte, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Cleveland, Ohio, hereinafter referred to as "Affiant", being duly sworn, depose and state as follows:

### INTRODUCTION

1. Affiant is currently employed as Special Agent for the Ohio Bureau of Criminal Investigation and have been so since October of 2022. Prior to that, the Affiant was a Law Enforcement Officer with the Euclid Police Department (EPD) since March of 2008. Affiant has been assigned to the DEA Cleveland District Office (CDO) since July 2018 as a Task Force Officer (TFO).

2. Consequently, Affiant is an "Investigative or Law Enforcement Officer" of the United States under 18 U.S.C. § 2510(7), and is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Affiant is also a "Federal law enforcement officer" under Federal Rule of Criminal Procedure 41(a)(2)(C).

3. In Affiant's current assignment to the CDO, Affiant has participated in investigations targeting individuals and organizations committing drug trafficking offenses in the Northern District of Ohio and elsewhere. At all times during the investigation described herein, Affiant has been acting in an official capacity as a TFO with the DEA.

4. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by agents and/or officers of the Drug Enforcement Administration (DEA) or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, any

information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known public database computer systems, by members herein described.

5.  Since the Affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, your Affiant has not included each and every fact known to him concerning this investigation.  Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of the criminal complaint and arrest warrant.

6.  This affidavit is offered in support of the issuance of a complaint and arrest warrant for Isiah CRENSHAW, Isiah HALL, Markiese SMITH, and Devin LONG for violations of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 846, that is Conspiracy to Possess with Intent to Distribute Controlled Substances.

## TRAINING AND EXPERIENCE

7.  Affiant has participated in courses and received training in the detection, recognition, packaging, and selling of controlled substances and dangerous drugs, training in investigative techniques through course work at the Ohio Peace Officer Training Academy, the DEA Basic Narcotics Investigator Course, the Northeast Counterdrug Training Center, Ohio High Intensity Drug Trafficking Area, numerous narcotics investigations as a member of the Euclid Police Department, and other law enforcement training centers regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. Affiant's experience as a Narcotics Detective and TFO includes, but is not limited

to:  physical and electronic surveillance, participating in Title III wiretap investigations, analyzing pen register and telephone toll data, interviewing witnesses, drafting and executing search warrants seeking evidence of drug violations, processing seized evidence, supervising the purchase of controlled substances by confidential sources, and debriefing persons arrested and convicted of drug trafficking offenses regarding their illegal activity.

8. From my participation in these investigations, Affiant has become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.  Based upon Affiant's training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking and money laundering activity, Affiant is familiar with the ways in which drug traffickers and money launderers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, and the ways that drug traffickers and money launderers use cellular telephones, digital display paging devices, and calling cards to facilitate their activity.  Drug traffickers and money launderers also use numerical codes and code words to conduct their transactions.  In Affiant's experience, drug traffickers and money launderers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their activities from law enforcement.  Affiant is also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of off shore accounts.

9. Affiant has participated in numerous drug-related investigations involving the following types of drugs: heroin, cocaine and cocaine base, methamphetamine and crystal methamphetamine, fentanyl and fentanyl analogues, and marijuana.

10. Affiant knows that persons engaged in drug activity require expedient forms of communication to maintain an adequate and consistent supply of drugs from sources, and to effectively market those drugs to customers. Continued access to cellular telephones (traditional and pre-paid) is crucial to the success of drug traffickers. Further, Affiant knows that wholesale narcotics distributors will frequently use more than one source of supply in order to obtain the lowest price and/or maintain a steady supply of narcotics. Professional drug distributors often provide drugs to associates on credit and receive payment once the drugs are sold, a practice known as "fronting."

11. Based upon Affiant's training and experience, Affiant knows that drugs are generally stored and dispersed at varied, and highly secret locations to avoid seizure and theft. Payment for drugs usually occurs at quickly arranged meetings and at various locations separate from those used to store the drugs. Telephonic contact is therefore required to coordinate and conduct the ongoing illegal narcotics transactions.

## BACKGROUND OF INVESTIGATION

12. In March 2023, Alcohol Tobacco and Firearms (ATF) Special Agent (SA) Christopher Seibel contacted your Affiant requesting assistance from the DEA -Cleveland District Office to investigate the drug trafficking activities of Isiah CRENSHAW.

13. According to SA Seibel, the ATF developed a confidential source, (hereinafter referred to as CS), during an ATF investigation who wanted to cooperate with law enforcement for consideration on pending charges.

14. According to SA Seibel, the CS provided information about drug dealer utilizing the street name "BLACK" who sold Methamphetamine, Fentanyl pills and Cocaine in the Cleveland Ohio area. At the direction of investigators, the CS was able to find out what phone number "BLACK" was utilizing the phone number of 216-487-7312, to conduct his drug trafficking activities.

15. Upon doing so, at the direction of investigators, the CS was able to meet with "BLACK" and establish a rapport with him. After meeting with "BLACK", the CS informed SA Seibel that "BLACK" was able to sell the CS ounces to pounds of Methamphetamine, numerous Fentanyl pills, and ounces of Cocaine.

16. SA Seibel researched 216-487-7312 utilizing a law enforcement database, found that the phone number was associated to a male named Isiah Deonte CRENSHAW (DOB: 12/23/1988). SA Seibel was then able to show the CS an Ohio BMV of CRENSHAW. The CS identified CRENSHAW to be the drug dealer he/she knew as "BLACK".

17. A computerized criminal history search of CRENSHAW revealed arrests for Drug possession, Trafficking Drugs, Obstruction, corrupting another with drugs, Tampering with evidence, and Domestic Violence.

## PROBABLE CAUSE

18. On March 8, 2023, members of the DEA and ATF Task force conducted a controlled purchase from Isiah CRENSHAW for a half (1/2) ounce of Cocaine, fifty (50) purported blue M-30 pills (suspected Fentanyl pills), and one (1) ounce of purported Methamphetamine.

19. A Cuyahoga County Regional Forensic Scientific Laboratory (CCRFSL) report # 2023-001918-001 dated April 4, 2023 confirmed that Exhibit 1 was in fact 13.82 grams of

Cocaine; Exhibit 2 (the purported Fentanyl pills) was in fact 5.46 grams / 50 pills of a Acetylfentanyl, 4-ANPP, and Fentanyl mixture; and Exhibit 3 was in fact 30.93 grams of Methamphetamine.

20. On March 14, 2023, investigators conducted a controlled purchase from CRENSHAW (utilizing the aforementioned CS) for one hundred and fifty (150) purported blue M-30 pills (suspected Fentanyl pills) 1/4 pound of purported Methamphetamine, and from CRENSHAW.

21. On this date, prior to this controlled purchase, investigators followed CRENSHAW to 2827 Wellington Avenue, Parma, Ohio then travelled to 3186 W. 52 Street, Cleveland, Ohio. After visiting these locations, CRENSHAW then met with the CS and sold the CS the purported blue M-30 pills (suspected Fentanyl pills) and the 1/4 pound of purported Methamphetamine.

22. Once the transaction was completed, surveillance units followed CRENSHAW as he travelled back to 3186 W. 52 Street, Cleveland, Ohio. CRENSHAW was again observed exiting his vehicle and walk up the driveway to again visit one of two doors located the driveway side / south side of the home. Within moments, CRENSHAW returned back to his vehicle and left.

23. Based on the above observations detailed above, and the training and experience of investigators, it was determined that CRENSHAW first visited 2827 Wellington Avenue, Parma, Ohio to retrieve part of the drugs he eventually sold to the CS. More specifically, based on the investigation as a whole (to include details mentioned later in this affidavit), investigators believe that on this date CRENSHAW had retrieved the one hundred and fifty (150) purported blue M-30 pills (suspected Fentanyl pills) he sold to the CS from 2827 Wellington Avenue,

Parma, Ohio. Furthermore, investigators believe that CRENSHAW travelled from 2827 Wellington Avenue, Parma, Ohio to 3186 W. 52 Street, Cleveland, Ohio to retrieve the methamphetamine in order to complete the sale. CRENSHAW then met with the CS on W. 54 Street near the intersection of Kouba Avenue, Cleveland, Ohio where the drug transaction took place.

24. A CCRFSL report # 2023-001918-002 later confirmed that the purported Fentanyl pills were in fact 16.27 grams / 149 pills of a Acetylfentanyl, 4-ANPP, and Fentanyl mixture; and Exhibit 5 was in fact 111.25 grams of Methamphetamine.

25. As the investigation continued, the CS and CRENSHAW maintained a relationship and communicated via calls in text. During that time CRENSHAW explained to the CS that he was being supplied drugs by a third party he referred to as "plug" aka supplier. In an effort to identify the supplier, investigators conducted a third controlled purchase from CRENSHAW.

26. On March 23, 2023, investigators conducted a controlled purchase from CRENSHAW (utilizing the aforementioned CS) for one hundred and fifty (150) purported blue M-30 pills (suspected Fentanyl pills) and one pound of purported Methamphetamine, and from CRENSHAW. On this occasion, investigators established surveillance of CRENSHAW in North Olmsted, Ohio and at 3186 W. 52 Street, Cleveland, Ohio, based on the observations made during the previous controlled purchase on March 14, 2023.

27. At the direction of investigators, the CS called CRENSHAW to initiate the controlled purchase. During those calls, CRENSHAW explained that he was only in possession of the pills, but was waiting for a call from his "plug" (aka supplier) for the methamphetamine.

28. Based on CRENSHAW's statement to the CS, investigators believed that CRENSHAW was checking with his methamphetamine supplier for the availability of the one pound of methamphetamine.

29. While the CS waited to hear from CRENSHAW, surveillance units followed CRENSHAW as he travelled from North Olmsted, Ohio towards the W. 54 Street and Clark Avenue, Cleveland Ohio area. During that time surveillance units at 3186 W. 52 Street, Cleveland, Ohio observed Isiah HALL arrive in his Honda Accord bearing Ohio license plate JYX3501 followed by a white Honda Pilot bearing Florida plate 98BKGH, driven by a male (later identified as Devin LONG). Both HALL and LONG then exited their vehicles, and entered 3186 W. 52 Street, Cleveland, Ohio through a door located at the southwest corner of the structure.

30. While this was occurring, the CS received a text from CRENSHAW instructing the CS to meet at the same spot as last time (referring to the area of W. 54th and Kouba Ave., Cleveland, Ohio as they did on March 14, 2023.)

31. Based on the above text to the CS, investigators believed that CRENSHAW must have communicated with his methamphetamine supplier and learned that the methamphetamine was available, which then caused CRENSHAW to continue with the transaction with the CS.

32. Surveillance units then observed CRENSHAW arrive at 3186 W. 52 Street Cleveland, Ohio and enter the structure via the same door HALL and LONG used. After a few minutes, CRENSHAW exits the residence and travelled to W. 54th street to meet with the CS and conduct the drug transaction. Once the transaction was completed, surveillance units followed CRENSHAW as he travelled back to 3186 W. 52 Street Cleveland, Ohio.

33. Based on the observations thus far, investigators believed that CRENSHAW arrived at 3186 W. 52 Street Cleveland, Ohio, met with HALL inside, and retrieved the methamphetamine which was then sold to the CS.

34. CRENSHAW was then observed knocking on the aforementioned door and waiting to be let in. After no response, CRENSHAW left in his vehicle. Surveillance units then followed CRENSHAW the area of the Steelyard Commons Plaza where he was observed meeting with HALL and LONG. During the meeting, surveillance units observed CRENSHAW at the driver side door of HALL's vehicle handing something through the open driver side to HALL.

35. Based on the observations thus far, investigators believed that CRENSHAW returned to 3186 W. 52 Street Cleveland, Ohio to meet with HALL again, but found that HALL was not there. CRENSHAW then later met with HALL handed him something. Based on how the event unfolded, investigators believed that CRENSHAW likely handed HALL the money owed for the methamphetamine.

36. Shortly after, CRENSHAW was observed leaving the area in his vehicle. Moments later, surveillance units observed HALL leave in the green Honda Accord and LONG leave in the white Honda Pilot. Surveillance units followed LONG as he travelled directly to a residence located at 3515 W. 46th Street, Cleveland, Ohio. Surveillance units followed LONG as he departed 3515 W. 46th Street, Cleveland, Ohio and travelled to the area of W. 80th Street and Lorain Avenue where he picked up three passengers. LONG along with the passengers then travelled directly to the Family Dollar Store located at 8404 Madison Avenue, Cleveland, Ohio arriving at approximately where investigators believe a drug transaction occurred between LONG and the occupants in the vehicle. Shortly after observing the drug transaction,

investigators coordinated with Ohio State Highway Patrol Trooper Jim Baker to conduct a traffic stop after observing that LONG failed to use his/her turn signal while merging onto the on ramp of interstate 90 (ORC:4511.39). During the stop, Trp. Baker positively identified LONG as the driver of the vehicle along with the occupants of the Honda Pilot Shawntell ELLIS (DOB:7/24/94); and rear passenger, Rashaun SMITH (DOB:6/25/94). LONG was given a verbal warning for the infraction and Trp. Baker terminated the traffic stop.

37.	Based on the observations detailed above along with the training and experience of the investigators involved, investigators determined that CRENSHAW and HALL were acting in concert (as dealer and supplier) on this date to distribute the methamphetamine purchased by the CS. Investigators, at this time, did not know what LONG's involvement was, but did determine that he was involved in trafficking drugs based on the observations noted during surveillance on this day.

38.	A CCRFSL report # 2023-001918-003 later confirmed that the Methamphetamine was in fact 445.16 grams of Methamphetamine; and purported Fentanyl pills were in fact 16.55 grams / 152 pills of a 4-ANPP and Fentanyl mixture.

39.	A computerized criminal history search of Isiah HALL revealed prior arrests for: Drug Trafficking; Drug possession; CCW; Receiving Stolen Property; Burglary; Improper handling of weapons; Probation violation; and Possession of criminal tools.

40.	Investigators later learned that LONG was currently under the supervision of Ohio Adult Parole Authority (APA) for charges stemming from Cuyahoga County Court of Common Pleas case number CR17-623883.

41.	Further research revealed that Devin LONG's registered address with APA is 3231 W. 35 Street, Cleveland, Ohio. According to APA records, LONG is registered as a gang

member for the "Loyal Always" Cleveland based gang. A computerized criminal history check revealed prior arrests for: CCW; Trafficking Drugs; Possession of criminal tools; Drug possession; Receiving Stolen Property; and Probation Violation.

42. As mentioned above, investigators noted that during the controlled purchase on March 23, 2023, CRENSHAW admitted to the CS to have contacted the "plug" via phone in order to fulfill the order of one (1) pound of methamphetamine. Based on CRENSHAW statements, investigators reviewed the tolls records for incoming and outgoing communications of CRENSHAW's phone number. In doing so, investigators noted that during the controlled purchase on March 23, 2023, CRENSHAW's phone number was in contact with a phone number unknown to investigators identified as 216-554-8430, hereinafter referred to as Target Telephone – 1 (aka **TT-1**).

43. Since the controlled purchase on March 23, 2023 detailed above, at the direction of investigators, the CS communicated with CRENSHAW via calls and texts. During those communications, the CS asked CRENSHAW for the phone number to the methamphetamine "plug" (aka source supply).

44. On March 28, 2023 the CS received a text from CRENSHAW with a photo of phone contact depicting the name "ZEEK WORK" and the phone number of "216-554-8430", aka **TT-1**.  CRENSHAW then sent another text to the CS that stated, "My peoples".  This text from CRENSHAW to the CS further corroborated what investigators had surmised, from the toll analysis of CRENSHAW's phone, that **TT-1** was the phone number to the methamphetamine "plug", aka source supply.

45. Based on this information, investigators then researched CRENSHAW's tolls during the previous two controlled buys of methamphetamine, on March 8, 2023 and March 14,

2023. Investigators found that CRENSHAW's phone number communicated with **TT-1** a total of sixteen (16) times[1]. Additionally, investigators reviewed CRENSHAW's tolls records since identifying his phone number during this investigation, toll records between January 4, 2023 and March 23, 2023, CRENSHAW's phone number communicated with **TT-1**[2] a total of two hundred and nineteen (219) times[3].

46. Investigators, utilizing law enforcement and commercial databases, were unsuccessful in identifying the individual using the street name "ZEEK WORK", who is believed to be the user of **TT-1**.

47. On April 7, 2023 United States Magistrate Judge Jennifer D. Armstrong for the Northern District of Ohio granted a warrant authorizing the electronic surveillance of **TT-1**, a phone Number utilized by methamphetamine supplier "ZEEK WORK".

48. On the same date the warrant was sent to the service provider for the phone, Verizon Wireless. The first "PING" was captured at 5:10 p.m. (EST), placing the device at within a 443 radius of Latitude = 41.467364 / Longitude = -81.719473[4]. Based on these coordinates placed the phone in the area of 4708 Oakley Avenue, Cleveland, Ohio. Approximately 0.2 miles from the suspected residence / stash house of Isiah HALL identified as 3186 W. 52 Street, Cleveland, Ohio.

49. Utilizing the "PING" of **TT-1**, in conjunction with the remote surveillance device (mentioned above), investigators have conducted surveillance at 3186 W. 52 Street, Cleveland,

---

[1] On March 8, 2023 – four incoming and four outgoing communications (calls and text); and on March 14, 2023 – three incoming and five outgoing communications (calls and texts).
[2] On March 29, 2023, the service provider of **TT-1** was "Tracfone Wireless" a subsidiary of Verizon Wireless responded to an administrative subpoena requesting all account information and toll records. According to the service provider, **TT-1** was activated on December 01, 2022 and the subscriber is unknown.
[3] One hundred and forty-one incoming and seventy-eight outgoing communications (calls and texts).
[4] Based on these coordinates placed the phone in the area of 4708 Oakley Avenue, Cleveland, Ohio. Approximately 0.2 miles from 3186 W. 52 Street, Cleveland, Ohio.

Ohio and have determined that while HALL is at residence, the "PINGs" for **TT-1** are in the vicinity of the residence. When HALL is noted as having left and returning to the residence, the "PINGs" for **TT-1** are noted as also travelling from the residence and returning. Therefore, investigators determined that HALL is in fact utilizing **TT-1**.

50. The following details a controlled purchase conducted by investigators on April 11, 2023 involving the aforementioned CS. The following details also encompasses the use of the remote surveillance device installed at the residence of Isiah HALL at 3186 W. 52 Street. Cleveland, Ohio; the electronic surveillance (PINGs) of 216-554-8430, aka **TT-1**; a toll analysis of **TT-1**; and a toll analysis of Isiah CRENSHAW's phone; in conjunction with physical surveillance at 3515 W. 46 Street, Cleveland, Ohio; and physical surveillance conducted at 3186 W. 52 Street, Cleveland, Ohio before, during, and after the controlled purchase:

- At approximately 08:00 a.m., assigned members of the DEA Cleveland District Office Task Force established surveillance at 3186 W. 52 Street, Cleveland, Ohio. Upon doing so, investigators noted that parked in front of the residence was Isiah HALL's Honda Accord bearing Ohio license plate JYX3501. Additionally, a review of the "PINGs" for **TT-1**, placed the phone in the vicinity of 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 10:17 a.m., as instructed by ATF SA Christopher Seibel, the CS called **TT-1** to initiate the controlled purchase. According to the CS, HALL answered the phone and told the CS the he (HALL) would be ready in 30 minutes.
- At approximately 10:19 a.m., investigators noted that the coordinates from electronic surveillance (PINGS) of **TT-1**, placed the device within the vicinity of 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 10:19, according to the tolls records of **TT-1**, HALL then called 216-482-6248 after speaking to the CS.
- At approximately 10:25 a.m., TFO Almonte conducted a spot check of 3515 W. 46 Street, Cleveland, Ohio (a residence used by Devin LONG). Upon doing so,

TFO Almonte noted that parked in front of this home were two vehicles (car rentals), a silver Chevy Impala bearing KNX5129; and a gray Nisan Rouge bearing Florida plate JJGG15.

- At approximately 10:35 a.m., investigators noted that the coordinates from electronic surveillance (PINGS) of **TT-1**, placed the device within the vicinity of 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 10:38, according to the tolls records of **TT-1**, HALL then received a call from 216-482-6248.
- At approximately 10:51 a.m., utilizing the remote surveillance device at 3186 W. 52 Street, Cleveland, Ohio, investigators noted that a black male dressed in all black with white shoes, had arrived at the home and was by the male greeted by another black male also dressed in black with red shoes. Based on the physical appearance of the male dressed in black with white shoes investigators were able to determine that the male was in fact Isiah CRENSHAW. CRENSHAW was noted as utilizing his phone while standing in the driveway before walking to the southwest corner of the residence at which point investigators believed he entered the home via the door that leads to 3186 W. 52 Street, Cleveland, Ohio.
- According to the tolls records of **TT-1**, at approximately 10:51 a.m., HALL received a call from 216-482-7312, a phone number utilized by CRENSHAW.
- At approximately 11:00 a.m., ATF SA Christopher Seibel, ATF SA John Fisher, DEA TFO Ryan Kron, TFO Bradley Doolittle and TFO Orlando Almonte, met with the CS at a predetermined location. The CS and his/her vehicle were then searched by TFO Kron, as witnessed by TFO Almonte, for money and contraband with negative results. The CS was then provided the DEA prerecorded confidential funds for the transaction, By TFO Kron as witnessed by TFO Almonte. The CS was outfitted with audio and video recording devices for the controlled purchase by SA Seibel and SA Fisher. The devices were found to be in good working order.
- At approximately 11:04 a.m., TFO Matos and TFO Harper (who were at 3186 W. 52 Street, Cleveland, Ohio) noted that a Silver Kia bearing Ohio license plate JWY6167 was now parked near the residence and occupied by a white female

driver with blonde hair. Investigators later learned that this vehicle was registered to Enterprise Car Rental. Investigators later learned that according to Enterprise Car Rental, the vehicle had been rented by CRENSHAW.

- At approximately 11:05 a.m., investigators noted that the coordinates from electronic surveillance (PINGS) of **TT-1**, placed the device within the vicinity of 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 11:08 a.m., TFO Matos observed that the aforementioned silver Chevy Impala bearing New York plate KNX5129, (which was seen at 3515 W. 46 Street, Cleveland, Ohio minutes earlier) had arrived at 3186 W. 52 Street, Cleveland, Ohio. Utilizing the remote surveillance device, investigators noted that the driver, (a black male wearing a black hat, wearing a black hoodie and blue jeans), exited the vehicle holding a bright orange bag. The male then walked the southwest corner of 3186 W. 52 Street, Cleveland, Ohio at which point investigators believed he entered the home, through the door that leads to 3186 W. 52 Street, Cleveland, Ohio. During the operation, investigators learned that the Chevy Impala bearing New York plate KNX5129 was registered to Budget / Avis Car Rental. According to their records, the vehicle (on this date) was rented out to Devin LONG. Based on the physical appearance of the driver on this date, investigators believed the male to be Devin LONG.
- According to the tolls records of **TT-1**, at approximately 11:08 a.m., HALL received a call from 216-482-7312, a phone number utilized by CRENSHAW.
- At approximately 11:09 a.m., utilizing the remote surveillance device, investigators observed the male believed to be LONG exit 3186 W. 52 Street, Cleveland, Ohio without the orange bag and leave in the silver Chevy Malibu.
- At approximately 11:15 a.m., at the direction of investigators, the CS was instructed to call HALL aka "ZEEK WORK" at **TT-1**. During the call, HALL and the CS agreed to meet with each other to conduct the drug transaction. HALL then instructed the CS to meet near the intersection of W. 56 Street and Clark Avenue, Cleveland, Ohio.
- At approximately 11:16 a.m., utilizing the remote surveillance device, investigators observed CRENSHAW appear from the southwest corner of 3186

W. 52 Street, Cleveland, Ohio and walking south on W. 52 Street, out of view, towards the Silver Kia bearing Ohio license plate JWY6167. Investigators believe he left in the vehicle.

- At approximately 11:19 a.m., investigators noted that the coordinates from electronic surveillance (PINGS) of **TT-1**, placed the device within the vicinity of 3186 W. 52 Street, Cleveland, Ohio.

- At approximately 11:23 a.m., utilizing the remote surveillance device, investigators observed Isiah HALL and a black male dressed in a white tank top, black pants and red shoes (here in after referred to as FNU LNU #1) appear from the southwest corner of 3186 W. 52 Street, Cleveland, Ohio. Investigators noted that HALL was carrying the same orange bag that LONG had arrived with at 11:09 a.m. (as detailed above). HALL and FNU LNU #1 then walked towards HALL's Honda Accord bearing JYX3501. While at the vehicle, FNU LNU #1 runs back to 3186 W. 52 Street, Cleveland, Ohio to retrieve the keys to the vehicle while HALL waits and appears to be on the phone. When SMITH returned, both males leave in the Honda (HALL – driver / FNU LNU #1 runs – front seat passenger). Surveillance units then followed them to the area of W. 56 Street and Clark Avenue.

- At approximately 11:28 a.m., HALL called the CS asking for an estimated time of arrival. During this time, surveillance units (assigned to follow the CS) had followed the CS to the area of W. 56 Street and Clark Avenue, Cleveland, Ohio.

- At approximately 11:34 a.m., investigators noted that the coordinates from electronic surveillance (PINGS) of **TT-1**, now placed the device within the vicinity of W. 56 Street and Clark Avenue, Cleveland, Ohio.

- At approximately 11:45 a.m., the CS arrived and met with HALL and FNU LNU #1, in HALL's vehicle to the drug transaction for (1) pound of purported Methamphetamine from HALL aka "ZEEK WORK", utilizing $3,000.00 of prerecorded OAF.  Once the CS exited HALL's vehicle, surveillance units followed HALL and FNU LNU #1 as they returned back to 3186 W. 52 Street, Cleveland, Ohio arriving at approximately 11:50 a.m. Upon arriving, TFO Matos

observed the HALL and FNU LNU #1 enter the door located at the southwest corner of 3186 W. 52 Street, Cleveland, Ohio.

- At approximately 12:13 p.m., surveillance units observed FNU LNU #1 exit the residence and leave in HALL's Honda Accord. Investigators presumed that HALL stayed in the residence. Surveillance units then follow SMITH throughout Cleveland and nearby cities. Between 12:13 p.m. and 1:23 p.m., surveillance units followed FNU LNU #1 as he made frequent stops at local gas stations. During those visits, surveillance units observed FNU LNU #1 conduct drug transactions with awaiting customers before returning to 3186 W. 52 Street, Cleveland, Ohio. At this point physical surveillance is terminated.

- During this time, the CS met with ATF SA Seibel, ATF SA John Fisher, and TFO Orlando Almonte at a predetermined location. The CS turned over the purported drugs over to ATF SA Seibel, as witnessed by SA Fisher. The CS and his/her vehicle were again searched by SA Seibel and SA Fisher for money and contraband with negative results. During a debrief of the CS, conducted by SA Seibel, SA Fisher, and TFO Almonte the CS again positively identified the driver of the Honda as "ZEEK WORK", aka Isiah HALL. The CS did not know the passenger, aka FNU LNU #1, but described the male as a young black male wearing a white tank top. The CS added that FNU LNU #1 had a unique hear tattoo of a large "broken heart" on his left cheek. According to the CS, HALL was rushing the CS to complete the deal while FNU LNU #1 was attempting to carrying on a conversation with the CS. During the deal, the CS observed FNU LNU #1 reach down towards the front passenger floorboard to retrieve a bright orange bag. SMITH then placed the bright orange bag on the center console between the front two seats. At this time the CS saw the bright orange bag contained a clear zip loc bag that contained the methamphetamine. The CS then completed the drug transaction of $3,000.00 for the methamphetamine with HALL and FNU LNU #1 before exiting HALLS's vehicle.

51. Subsequently after the controlled purchase detailed above, investigators reviewed the toll records for **TT-1** and were able to identify 216-482-6248[5] as a phone number utilized by Devin LONG. At this point of the investigation, based on the training and experience, investigators believe that HALL, CRENSHAW, LONG, and FNU LNU #1 met at 3186 W. 52 Street, Cleveland, Ohio on this day and acted in concert to further their drug trafficking activities as whole or as a drug trafficking organization. Investigators base their belief on the following summary of facts utilizing the details above in conjunction with the toll records:

- Upon the CS calling HALL at **TT-1** at approximately 10:17 a.m. to initiate the purchase, it caused HALL to immediately call 216-482-6248 at 10:19 a.m. Investigators later determine that 216-482-6248, is a phone number believed to be utilized by Devin LONG (as detailed below in affidavit).
- At approximately 10:38 a.m., LONG (utilizing 216-482-6248) called HALL back.
- At approximately 10:51 a.m., CRENSHAW arrives at 3186 W. 52 Street, Cleveland, Ohio and meets with HALL.
- At approximately 11:08 a.m., LONG arrives at 3186 W. 52 Street, Cleveland, Ohio driving in the silver Chevy Impala and delivers the bright orange bag that later contained the methamphetamine sold to the CS. Shortly after LONG leaves 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 11:15 a.m., CRENSHAW is observed leaving 3186 W. 52 Street, Cleveland, Ohio.
- At approximately 11:23 a.m., HALL and FNU LNU #1 leave 3186 W. 52 Street, Cleveland, Ohio with the same bright orange bag that was carried into 3186 W. 52 Street, Cleveland, Ohio by LONG.
- At approximately 11:45 a.m., HALL and FNU LNU#1 sell the CS the methamphetamine which was transported in the bright orange bag.

---

5 After receiving the toll records for 216-482-6248, investigators reviewed and compared these tolls with the tolls of phone numbers documented with APA for Devin LONG, listed as 501-276-5552 and 216-463-1489. A common call analysis revealed that 5552, 1489 and 6248 had fifty-three (53) common phone numbers. Therefore, investigators believe that LONG was also utilizing 216-482-6248.

- Between 12:13 p.m. and 1:23 p.m., FNU LNU #1 is observed by surveillance units utilizing HALL's vehicle to conduct drug transactions at gas stations with awaiting customers.

52. Based on the details above, investigators believe that HALL called LONG to have the methamphetamine delivered. LONG then arrived at 3186 W. 52 Street, Cleveland, Ohio driving the aforementioned silver Chevy Impala which was seen at 3515 W. 46 Street, Cleveland, Ohio just minutes before. LONG then enters 3186 W. 52 Street, Cleveland, Ohio where he meets with HALL, CRENSHAW and FNU LNU #1. Investigators believe that during that meeting, LONG delivered a resupply of methamphetamine to HALL, CRENSHAW and FNU LNU#1. Once the resupply was conducted, LONG leaves the residence followed shortly by CRENSHAW. Minutes later, HALL and FNU LNU #1 leave 3186 W. 52 Street, Cleveland, Ohio with the orange bag (LONG was seen with) and contained the methamphetamine the CS purchased.

53. The pound of methamphetamine purchased on this date was submitted to CCRSFL for chemical analysis. The results of the analysis are still pending.

54. During this investigation, investigators reviewed toll records for incoming and outgoing communications (calls and texts) made to and from **TT-1** before, during and after the controlled purchase on April 11, 2023. A review of those tolls revealed a phone number not familiar to investigators identified as 216-571-6797. A computerized open source of information revealed that the phone number was attributed to a Markiese SMITH (DOB: 08/17/1989), hereinafter referred to as M. SMITH.

55. Investigators found that M. SMITH was currently under the supervision of Ohio Adult Parole Authority (APA) for charges stemming from Cuyahoga County Court of Common

Pleas case number CR06-489091, in which M. SMITH was charged for Attempted Aggravated Murder & Aggravated Robbery as a juvenile. According to APA records, the phone number listed for M. SMITH is in fact 216-571-6797, and he is a registered "Heartless Felon" gang member.

56. Investigators then found that M. SMITH was in fact FNU LNU#1 who accompanied Isiah HALL on the April 11, 2023 controlled purchase for one (1) pound of methamphetamine; and was also the person who handed the bag that contained the methamphetamine to the CS.

## CONCLUSION

57. Based upon the listed facts and circumstances, your Affiant asserts that there is probable cause to believe that on March 8, 2023 and April 11, 2023, Isiah CRENSHAW, Isiah HALL, Devion LONG and Markiese SMTIH conspired to possess with intent to distribute controlled substances, in violation of 21 USC 841 (a)(1), (b)(1)(A), and 846.

_____
Orlando Almonte
Task Force Officer
Drug Enforcement Administration

This affidavit was sworn to by the affiant, who did no more than attest to its contents pursuant to Crim. R. 4.1(b)(2)(A), by telephone after a PDF was transmitted by email, per Crim R. 4.1 on this 28th day of April, 2023.

James E. Grimes Jr., United States Magistrate Judge